I wanted to get this hook on the  Mr. Roderick. Thank you your honor. Ryan Lever was arrested and charged with theft under 943 20 sub one sub even with stats all based on a contract that he entered into with Hertz and Appleton to rent a car. The contract says on its face that he either needs to bring that back to the Appleton location by the 16th of but he will need to pay more money. In fact he returned the car to Hertz in Belgrade Montana less than 30 days after the rental. Sergeant Shortus after an initial investigation was made by another officer based on a complaint from Hertz took over the investigation and concluded. Counsel let me tell you I've got a problem in this case about what it is you're complaining about. Normally cases of this kind are claims as our last one was for false arrest but Shortus never arrested your client. He made a report to the prosecutor and the prosecutor then initiated a criminal prosecution. So this sounds like a claim in the nature of malicious prosecution but there's a big problem. There is no claim for malicious prosecution. That's wholly a state law claim. I think it is a claim for false arrest runner because specifically there are several number of cases that say when you effectively cause the arrest to be made the fact that you didn't personally file the charges or affect the arrest and the defense has said well he didn't arrest him someone else did. The arrest was because after the criminal charges were filed by the prosecutor. Am I right? The charges were filed at the instance of Sergeant Shortus. I don't see how they were filed at the instance of him. He made a report to the prosecutor. The prosecutor is not the tool of police officers. Prosecutors prosecute a subset of cases where the police report a claim. Here's a claim by Hertz Corporation that his car has been stolen. The officer reports this claim to the prosecutor. The argument you're making is that Shortus omitted facts favorable to the defense from his report to the prosecutor. That's true. Prosecutor then files a charge, arrest, and prosecution follows. Have we established that that creates a Fourth Amendment claim for false arrest against the officer? You don't cite any cases to that effect. As I say it sounds like a malicious prosecution theory and there isn't any federal malicious prosecution doctrine if state law allows malicious prosecution suits, which Wisconsin does. Well there are a number of cases, Judge, and I'll cite in a second, but we have cited a number of cases including Jones v. Chicago. The case, the Evans case, that's the Duke lacrosse team case. There are a number of cases. In Jones against Chicago the defendant was convicted and the theory was not a Fifth Amendment claim, but a Fifth Amendment claim that material exculpatory evidence had been withheld in the criminal prosecution itself. That doesn't help you because we have held that that theory does not apply unless the defendant is actually convicted. Your client has not been convicted. That's certainly true, Your Honor. So Jones doesn't get you to first base. It's a Fourth Amendment theory and has been expressly held inapplicable in situations like this. Well let me cite then Bevier v. Hukal, which we cited in our brief. You know that case involves probable cause and probable cause to arrest and the lack thereof. In that case, which I think is remarkably similar to our own, the court concluded that the officer knowing the element, had to know the elements of crime, which included, as 943.21e does, that you have to knowingly have violated the terms of the contract. The terms of this contract clearly allowed Lever to do what he did and knowing that, knowing the terms of the contract, and knowing that 943.21e requires a knowing and intentional violation, we don't believe there was probable cause either initially and then secondly and probably more significantly, there is the incident where Lever, seven months after this initial charge was filed, Lever reaches out to the police department. Nothing has happened in the meantime. He sends them exculpatory evidence, sends it to the DA. The DA specifically directs Officer Shortest to look into this. He says this is what we're being told. He gives them the names of three exculpatory witnesses with phone numbers, including the phone number of the Hertz Belgrade operation where this was returned. The officer already knew that the car had been returned to Belgrade within 30 days. Despite that and despite being directed specifically by the district attorney to pursue these exculpatory witnesses, he failed to do so. He didn't talk to a single one of them, claims to have made one call, but admits that he made no contact with any of them and then despite the fact that the DA had said that he was concerned with this, he wanted this looked into, he then goes back to the DA and says the claims in the letter are not factual, when in fact he hasn't pursued the significant claims from the exculpatory witnesses. It seems to me that this case really is grounded in the doctrine of material omission from a police report seeking an arrest rather than, you know, whether there's independent probable cause. And that's a different line of case law and is basically grounded in the idea underlying the Franks decision that if material exculpatory evidence is intentionally or recklessly withheld from a warrant application, there can be liability or the warrant can be quashed and there can be civil liability. Is that really the line of cases that we're in and that you're trying to litigate this under? I think that's probably fair judge. What we have is a situation where there is the concerns about investigation and omission, I mean really deal with when it's reasonable to do that and what is reasonable for a police officer under those circumstances and the things that Well, no, that's the general probable cause analysis and it seems to me that there's probable cause here to issue this arrest warrant if we're looking at what's in the reports. But the question is what's not in the reports and what's not in the reports is that the car was located at the Hertz rental lot in Montana and so was returned within the meaning of the contract and that negates probable cause. So I mean the standard analysis for an omission case under the Fourth Amendment is whether the information that was omitted intentionally or recklessly would have negated probable cause and it that information was known to the prosecutor and to the issuing magistrate that there never would have been an arrest warrant or a charge in this case. I think that's correct judge. Specifically, one, the DA instructed him to do this, said I'm concerned about this, I think we need to see if there is another version of this story before he was going to have this man arrested at that point. The opportunity existed for Officer Shortes to short-circuit the whole process and the courts have said that you can't, once you have something before your eyes you can't ignore it. He had that before his eyes, he did ignore it, and then worse than that he misled the prosecutor. Well, the question then is materiality and whether the information about the car being returned to Hertz was material to the probable cause determination would have in fact negated it. We believe it is material for a couple reasons. One, based on the specific language of the agreement, he was entitled to do exactly what he did which was return the car to Hertz in Belgrade within 30 days, actually within 62. He did that. Secondly, well there's you know there's ambiguity in the contract about that, right? With all respect judge, I don't believe it is elements of the crime is that it must be done knowingly if there is any ambiguity then certainly that would require further investigation to determine that he somehow did this knowingly. His letter clearly says he did not, that he believed he was within his rights. Hertz ultimately settled the case for $225,000 which shows that they believed he was within his rights. This is another case then. It is a civil case that we brought in. I was curious about that in the order, or at least in the opinion, it said $225,000. You know he spent what, 82 days in prison? Eighty-two days and was extradited from Montana back to Wisconsin, yes. Because it's somewhere along the line you might say, well did he say who was ever arresting him to give him those names of the people at the, at Hertz? Other than I don't know when these names were given, when say Shortus didn't call them, well then when he gets captured and put in prison does he say did you call those people? Did anybody say that in that 82 days? Apparently not if you got a $225,000 settlement. May I respond? Yeah, please. Okay. First of all, the names, he actually gave the names. He hadn't been arrested at all. He reached out to the police himself, sent the DA, should say the district attorney, sent them the names with phone numbers and said contact these people from Hertz. They will tell you that what I did was perfectly okay. The DA went to Sergeant Shortus and said I want you to contact these witnesses. Sergeant Shortus failed to contact any of them and then misled the DA, at least by omission, to believe that he had in fact contacted them. Are you familiar with the case called Whitlock versus Brown in 2010 from this court? Don't recall seeing that one yourself. I do respect that Whitley, but not the Whitlock. It's basically on all fours with your case. It's a case about an officer withholding supposedly material exculpatory information in a police report that seeks a charge in the issuance of an arrest warrant and a qualified immunity claim, an associated immunity claim, and it turns on the question of the materiality of the omitted information. If I might offer one more thing on that, Judge. Officer Shortus was specifically questioned about whether he knew what he was doing with materials of the decision when he was directed to contact the witness that he said he did know that. He knew it was relevant to the DA's decision. Well, he also testified that he knew as of September 10th that the car had been recovered undamaged on the side of the road somewhere by the Montana State Police. That's correct. He did know that. He knew that at the time the initial warrant was issued. He also knew it, well, obviously during the entire seven months that intervened before Mr. Lever was arrested. Well, it was not abandoned at Hertz. That's another curious thing I had. You know, just went and parked it and left. Apparently not. There's an omission that Mr. Lever returned it on August 26th. And returned it and to a person and they signed off with the Yes. See, that's, I don't know why, it must have come up with Hertz. Maybe they hid it. That's why he got $225,000. I think there's no question he testified he returned it to Hertz. There's an omission by the defense that he did return it on the 26th. Before you sit down, I do have to ask you about the These arguments were essentially presented to two state judges in the criminal prosecution. One at the initial appearance and then later on a motion to dismiss. And the judges ruled, why aren't we stopped? In the case that, the Schertz case, that Schertz v. Wapaka County, excuse me, what happened there was there had been an extensive evidentiary hearing where there had been rigorous cross-examination of the officer. Other witnesses had been called. There had been extensive cross-examination. The court felt that under those circumstances it had been fully and fairly litigated. And that I think distinguishes it from our case where no witnesses were called. There was no opportunity for cross-examination. In the Whitley case, which we cite in our brief, that case I think is closer. And there they held this. There was no grounds, there was no grounds for collateral estoppel. And I think that the case cited by the defense is just clearly inapposite to the facts here. Thank you. Thank you, Mr. Riley. Mr. Bitar. Good morning, Your Honors. Remzi Bitar, law firm of Arendz-Molter, Macy Riffle, and Larson in Waukesha. I'm not sure what the facts of this case. You may notice in Judge Griesbach's decision, it took me a second reading, he doesn't cite any case law. Judge Griesbach scoured the record. He found that the officers acted with probable cause. And you take Judge Griesbach's decision and you look at similar cases where this has all been addressed before. The Graminos case from maybe a decade or two decades ago involved, rather than a Hertz rental, a Jewel Osco store, and rather than a stolen rental vehicle, shoplifting items. And it's the same. Cases of Buchamp, Fleming, Manoia, Hart, Askew, and Buchamp all support Judge Griesbach's decision in this case that there was probable cause, which precludes the false arrest claim in this case. There's no material exculpatory evidence. When counsel gets back up here, ask him, where's the beef? There's no exculpatory evidence in this case. Officer Shortus received a report through the National Database and through his office staff that the car had been located in Montana. He took that along with the initial officers, a report officer Drew, who had acted upon a theft complaint from Hertz rental during normal business hours. He omitted the fact that, and he apparently knew it in September, on September 10th when he picked up the investigation, he omitted the fact that the car had been recovered at a Hertz lot in Montana. Why is that not material? I think that there's some confusion based on the arguments being presented. I think he was aware that it was recovered in Montana. He was never aware that it was properly returned to Hertz. He admitted in his deposition that he was aware that it had been returned to Hertz in Montana. I believe he actually testified that he was aware that the vehicle was located and recovered at a Hertz location in Montana. That's what he admitted to. Correct. Not that it had been properly returned. And the complaining witnesses in this case from the Hertz Appleton said this was not... Well that begs the legal question about what constitutes a sufficient return under the contract and whether the contract had expired. Those are those are legal issues that are subject to some debate in this litigation, but in terms of the materiality of the omission, you don't think it would be important to the prosecutor and the warrant issuing magistrate to know whether the car had been found at a Hertz location? The prosecutor and two state criminal judges did not believe that that was material. They were fully aware that Mr. Lever was opining or alleging that the car was properly returned. They had credible witnesses from Hertz Appleton saying the car was not properly returned back to Appleton, that there was no authority to take this car out of state, and there's no evidence whatsoever other than Mr. Lever's speculation that the car was properly returned. The contract is certainly susceptible to that interpretation. It may be susceptible to different interpretations, but that doesn't mean that the police officer is exposed to damages because he misinterpreted the contract wrong. Okay, that's the main point here. Correct. So it's really a qualified immunity argument that he reasonably interpreted the contract and relied on what he was being told by the Hertz Appleton folks. That's correct, Your Honor. And again, the prosecutor, two separate criminal judges, and Judge Griesbach have all rejected that interpretation by Mr. Lever. So it was not unreasonable for Sergeant Shortest to interpret the contract the way he did. You're going too far in saying that they validated Hertz's interpretation of the contract. I'm not sure that they did that. The case was dismissed. It was never litigated to any kind of a final conclusion. But the point would be that even if Sergeant Shortest was mistaken, he would still be entitled to qualified immunity for that reasonable mistake of interpretation. And some of the cases that I mentioned before, particularly Gramonos and the others, all indicate that when an officer has received information from a person, normally the victim or the eyewitness, who seems to be reasonable in telling the truth, that the officers have probable cause. And we had that here from the get-go. Deputy Drews, who initially took the report... Well, that's true as far as it had in his possession material exculpatory information that would affect the probable cause determination, then omitting it may give rise to liability. And in this case we have the supplemental investigation by Shortest, where he did go back to speak to the Hertz manager, along with the West Bend Mutual corporate security official, and he confirmed with both of those, in fact he met with the Hertz manager a second time, he confirmed with both of those That was the Appleton people, right? That was the Appleton people. And after doing that, he went back and he informed the prosecutor who he had spoken to. Now, Mr. Lever believes that Sergeant Shortest should have gone and spoken to other people. Well, that's what he was in fact instructed to do by the assistant DA. He didn't do it. He didn't contact all the witnesses. Lever suggested that he talk to, for instance, Stacey Malorny, who was one of the adjusters who handled the initial rental agreement. Well, also the people from Hertz corporate. Also the people from Hertz corporate and Hertz Montana. Correct, but the Appleton Hertz were telling Sergeant Shortest that it's not a Hertz corporate issue, it's a local Hertz rental issue, and that the contract required him to bring it back into Appleton. Right, but the prosecutor is telling him to follow up on the witnesses that the defendant in the case had identified. Some of those witnesses had already been spoken to, such as Stacey Malorny, and he did talk to the Hertz, I don't know who else he's supposed to talk to, call the 1-800-National-Hertz number, but he's being told by Hertz local that it's a Hertz local issue. Right, but he's being told by the prosecutor to interview the witnesses that Mr. Lever had identified. Presumably the prosecutor considered that information material. I don't know if we know that, because the prosecutor's deposition has never been taken in this case, and so we don't know what the prosecutor thought. That's something that Mr. Lever... Do we know why there was a delay in six months in issuing the charge? That I don't know. I believe it was almost eight months, and I don't know the answer to that. Because he's asking for a charge and a warrant issue in September, right? Your client? Excuse me? Your client was asking for an arrest warrant and a charge as of September 10th, 2010. Correct. And that doesn't happen until March 2011. Correct, and there's nothing in the record that indicates what had transpired in those eight months in between. There was silence until Mr. Lever wrote his letter to the prosecutor trying to explain his position. The prosecutor hands it over to Sgt. Shortus, at which time Sgt. Shortus, as reflected in his supplemental report, made contact again with the Hertz manager and the West Bend corporate security officer. In Sgt. Shortus's report, it specifically says that he asked whether, in that supplemental investigation, whether these individuals knew that the vehicle had to be returned to the Hertz dealership in Appleton. And they stated that that was their understanding, that it had to come back to Appleton. Sgt. Shortus then reported, not only did he hand the supplemental investigation report back to the prosecutor, but he talked to the prosecutor. There's no evidence that the prosecutor thought that his supplemental investigation was short or that he should have conducted additional steps. And I don't think he would have had to under some of the case law that we pointed out before. The prosecutor made his own independent decisions to move forward with the charges. And just because he ultimately dropped the charges later on doesn't mean that... He's not suing for malicious prosecution. Correct. He's suing for false arrest based on the erroneous omission of material information from the application, the Now the prosecutor could have withdrawn the warrant after the supplemental investigation was conducted, but did not. You know, and the plaintiff was ultimately arrested and extradited from Montana, spent 82 days in jail. That's true. So I think the claim is for the harm from the arrest, not the harm from the continued prosecution, which went on for about six or eight months after he was brought back. That's true. And as Judge Griesbach found, Sergeant Short has had probable cause and the prosecutors had all the information, including whatever alleged exculpatory information, lever claims, was out there. And the prosecution continued. It continued after the preliminary hearing. Yeah, he's not suing for that harm. He's suing for the harm from the arrest. The 82 days he allegedly without this material information. The briefing and underlying proceedings focused on whether there was probable cause for the arrest. And I don't know how else to interpret what has transpired over the last year in this litigation, but the claim before Judge Griesbach and the summary judgment briefing before Judge Griesbach all involved whether or not there was a very reasonable, logical decision that found that of the witnesses that were spoken to and the information that was collected, there was more than enough for probable cause. Well, I keep coming back to this issue of the $225,000. Obviously Hertz admitted to something that they really did wrong. And it may be that the information that Short has got from Hertz, maybe this would be part of your argument, was totally wrong. And Short didn't know it. I'm baffled with that kind of a settlement. Not because it's not justifiably a reward for spending 82 days in prison when you shouldn't have, but that it was Hertz's fault. Now that's implied here. Just because he said it in the order, that's what? And there must have been an awful lot of information discovered that maybe we don't know about here. And I don't know if we know about it either. All we know, and Hertz is not involved in this litigation. I don't even know if there was litigation against Hertz, but yes, we do know... It's in the order. There is a reflection in this record that there was a settlement with Hertz for that amount of money. Whether it was pre-suit, after suit, we don't know. There was never ever any discovery in this case involving... It says after the settlement this filing took place. Whatever... The settlement with Hertz would have occurred before this litigation. Well, it says that after settling this claim against Hertz for $225,000, Lever filed this action against Sergeant Shortz. Correct. Well, that's the sequence. That is the sequence. All I'm indicating is I don't know whether there was any litigation against Hertz. All we know was the fact that there was a settlement. Whether it was pre-suit without litigation, I don't know. But I don't know if it would make a difference if Hertz was wrong. All of these cases that I've pointed out before, say an officer can rely on information from a witness, as long as they appear to be telling these officers that this is a stolen car. If they turned out to be incorrect, then Mr. Lever has had his remedy. He has collected $225,000 from Hertz and there should be no civil rights remedy against the police officers for acting reasonably, based on the information that they had. And again, Judge Griesbach, I think, has written, has taken the time to go through the record, has interpreted the case with inferences favorable to plaintiff and has found under the record that the officers here, Sergeant Shortz, acted with probable cause and that the prosecution would have continued, irrespective of whatever Mr. Lever might be throwing at Sergeant Shortz in this litigation or before this court today. And I think that his decision is well buttressed by a number of the cases that I mentioned earlier, particularly Gramino's. And for these reasons, Sergeant Shortz respectfully requests that this court affirm the summary judgment dismissal of this lawsuit. Mm-hmm. Thank you, counsel. Anything further, Mr. Raleigh? First, let me just cite the two cases I think really are critical here. One is the Bevier, B-E-V-I-E-R versus Hukal, 806 F 2nd 123, which is a Seventh Circuit case, your circuit from 1986. Involved child abuse and arrest. There was no, what the court concluded was that there was an opportunity to ask questions to determine things, that that opportunity wasn't taken, and therefore there was not probable cause, and that there was other evidence that would have shown that arrest was not necessary. I think that's exactly the case here. What we have is the exculpatory witnesses, and frankly, the argument about them is just disingenuous. What Shortz does is go back to people he's already talked to who he knows from Hertz Appleton are going to say this guy committed a crime. He doesn't speak with a single one of the three exculpatory witnesses that Ryan Lever identified and that the DA specifically instructed him to speak with. He says there's no admissible evidence. Ryan Lever says in his letter what they'd say. He is testified to what they would have said, that he took the car back, was told he could, was told by Hertz that was fine. It's also contained in the letter. He's entitled to every reasonable inference at this point, and certainly he's entitled to the inference that those witnesses would have said something. Based on what the DA told Shortus, he's entitled to the inference that the DA was influenced, and indeed Shortus said he expected the DA to be influenced. Thank you, counsel. Thank you. The case is taken under advisement.